Now you may proceed. Thank you, Your Honor. Good morning. My name is Michael Donahoe. I'm with the Federal Defender's Office in the District of Montana, and I'm here on behalf of my client today, Mr. Leo Scherzhe. We bring two claims to the court, one procedural claim involving application of the statute of limitations, and another involving discussion of some evidence at the trial proper. I'll begin with the statute of limitations claim and argue, I just think this is a very straightforward, honest, winnable argument here. Bridges says, under the United States Supreme Court precedent, that Congress must implement these changes. They must incorporate savings language in the legislation. There is none in this legislation. This is not a case in which the statute of limitations had lapsed. Under the prior version of the statute, your client could have been prosecuted until 2012. And Congress's clear intention, it seems to me, was to increase, and in no case decrease, the statute of limitations. So I just, I have difficulty seeing, if the amendment doesn't apply to him, then the prior law allows the prosecution. Well, I guess I have two responses to that. The first is that the statute that I cited where Congress did the 1990 amendment to the other statute, 3293, I think it is, there is a savings provision expressly in it, stating exactly that, Your Honor, that this new legislation, this extension of this time period, will apply to all persons on whom the previous amendment did not apply. So Congress did it in that instance. They said it. Well, they may have done it in excess of caution, but I don't understand the theory under which a, where there's an existing law that permits the prosecution until a long time in the future, and somewhere during that time, Congress says, well, we want for, in the future, for things to be even further out into the future, that that somehow benefits him to cut off a currently valid statute of limitations. Well, Your Honor, I want to go back, I guess, to what I was trying to explain. The fact that there was the expressed savings language in the other instance indicates that Congress understands how to do that. That's what Bridges is about, and, or Bridger is about. And they do it in one instance. They don't do it in another. I understand and recognize at the OCC that there's manifest intention on Congress's part to extend this limitation to include this population of people, one of whom is my client. But the second part of my answer to your question is I don't want to attribute, and I say this with respect to the culture, with respect to the Congress, not that there's anything sinister going on here. But if you look at the overall complexion of this legislation, it was always five years, then it got moved to 25 years until the child was 25 years, then it got moved to life. People have, it seems like they're trying to take anybody who committed any offense at any time and make the criminal law applicable to them. Now, I know that Stagner says that you can't do that. But the criminal law was already applicable to your client at the time of the crime and at the, and without that amendment would it continue to be applicable to him? It didn't revive anything. That's, I guess that's the difficulty. There was no gap. That's, I have the same concern. Well, but there doesn't need to be. There is a gap. I respectfully argue to your honors that there is a gap. If that savings clause language is not in there, there is a gap. When it was amended from 25 years up to the life of the child, the, remember that truly the applicable five-year limitation applies here. We're talking about tolling provisions here. And under Bridger, it's our argument that the Congress needed to say if you want to move this from 25 to life, then the people that, on whom the statute of limitations did not run, they should be included under this new time period. All right. But at the time of the passage of the new law, she had not yet reached the age of 25. And therefore, she was exposed. And I concede that. But that's an old tolling provision on the day that the new one is enacted. And back to my. Well, one of them has to apply. There's no suggestion in any of the legislation in its text or in its history that there was intended to be a cutting off of an existing statute of limitations that had not yet run. It had not yet run. And that's what you're asking us to say. When it said we don't want 25 years of age, we want until you're 80, that if you were 17, you now can't prosecute the person who sent this to you. I just don't see where there's any congressional intent that would allow us to do that or text. Respectfully, Your Honor, intent is not the standard. The rule is, according to the case law that has been longstanding, is that when Congress is going to make changes in this area and they want to expressly say gap or no gap, they want to make something applicable in this area of the law on these procedural technicalities, they must do so expressly. I just respectfully commend Your Honor's attention to my argument at page 9 of the blue brief. You can see there that when 3293 was amended, they expressly say there, the amendments made by this subsection shall apply to offenses committed before the effective date if the statute of limitations applicable to that offense under this chapter had not run as of such date. That's Mr. Shurchieff. That's him. And that language is absent from this legislation. And you can't go to legislative history and work on the intention. I think that's what Bridger says. I am running short of time here and did want to address the other issue, Your Honor, unless there are other questions. Or you may wish to reserve your choice. I'll just take a moment here to talk about trying to get the mom, Sandra Goings, to talk about B.V.'s stay at the White Buffalo home. And Your Honors probably are aware of the fact that when I put that question to the mother, an objection, an unspecified objection was made and was sustained by the trial judge, by Judge Haddon. And that line of questioning was completely cut off. We did go on and make the proof offer. And I guess I just want to say — Counsel, let me ask this. Where's the prejudice here in light of the fact that this is a full confession? Your Honor, that confession I think is counterbalanced by the testimony of the defendant himself. There was a factual question regarding influences that were brought to bear on him. He denied making the statement voluntarily, and that evidence did come before the jury. There was some evidence in my memory, Your Honor, that the questions were sort of suggested to him. It was suggested to him to write the apology. There was discussion on cross-examination with the man that took the statement, saying that he sort of tapped into some emotion on the part of Mr. Shurchieff. So I guess my basic answer is that we had another level of discussion with regard to the confession. It was under attack. And I think we suffered a direct hit here by not being able to get into, with some specificity, the substantial problems that this child was having for a considerable period of time. And I'd like to reserve. You may do so, Counsel. Thank you. Mr. Thagard? Good morning again. For the record, my name is Joe Thagard. I'm an assistant United States attorney from the Great Falls, Montana, office. I'll direct myself first to the issue of the statute of limitations. The fact of the matter is there was no gap. This defendant could have been prosecuted under either statute of limitations. And unlike Staubner, which tried to revive a previously told statute of limitations or a previously exhausted statute of limitations, that was not the case here. This defendant could have been prosecuted under the statute at the time of the commission of the crime or as it was subsequently amended. And I think that Friel v. Cessna Aircraft is instructive in this respect. And in particular, in that case, as the Court is well aware, there was an instance in which a two-year statute of limitations was extended to three. And the Court said in that case that it didn't affect substantial rights. It was directed to remedies and procedures. And that's the same case in this instance. With respect to the issue of the bridges case, what is your response to that specifically? My response to that is that I don't think that Bridger goes quite as far as it's presented by the appellant that a savings clause necessarily needs to be imposed. I think that the Court is, under Bridger, certainly entitled to look at the legislative history. And when the Court looks at that, I think that it's clear that in this instance, the amendment did nothing to alter the viability of this prosecution. With respect to the second issue, again, I would point out that, of course, the Court is operating with an abuse of discretion standard, as the Court well knows. I think that even if one considered that an error occurred here in the exclusion of the evidence, which we do not concede, that this is a case with overwhelming evidence of guilt. This defendant did, in fact, confess. He wrote a written confession, and that confession was presented to the jury. I would also point out that Sandra Goings was permitted to give considerably damaging testimony about her child, in effect calling her a liar. And I think that when one looks at all the evidence in this case, that there's really no reasonable doubt that this defendant committed this crime, that even if there was error in the preclusion of any of that testimony, it was harmless. Unless the panel has other questions, I'll resume my seat. No further questions? Counsel? I had a question. You're saying that the limitation on cross-examination had an effect on the confession? The limitation on cross-examination had to do with the girl, right, and her circumstances. Is it the claim of the defense that the girl coerced a confession out of the defendant? No, Your Honor, no. There's a disconnection there, isn't there? Any misunderstanding there? Actually, I was trying to separate them out, that we had our own separate attack vis-à-vis the confession. Oh, I misunderstood. And that I fully concede that this business involved the mother and the questioning of her own direct testimony. But I would suggest, respectfully, that there's a diminution. There's more cause, maybe, to look at the confession with suspicion if you know the problems, if you know more, if the jury knows more about the problems that the child is experiencing. I do claim that kind of a connection. We probably would have tried to bring that home, I'm certain. One thing I want to make clear about the statute of limitations claim, please, is that it's seductive and very inviting to buy into this ex post facto analysis here and say, well, no harm, no foul, because there was no revival. You know, part of this claim turns on a straight-up statutory analysis. Under anybody's analysis, the five-year statute of limitations is the governing limitation. And these two extensions are in the manner of tolling provisions that were applicable. So are you challenging the first extension as well as the second? No. Because we're out of the five years. We're at the age 25, at least at the time of the event. You know, all I'm saying, 1994, I think the first up to age 25 comes into existence. So clearly if this business happened in 1997, he's covered by that. I don't have a quarrel with that. All I'm saying is he's covered by that, but on the day that the 25-year term is extended to the life of the child, the 25-year term no longer exists. And unless there's the hookup to expressly save the two as a matter of statutory analysis, all I'm saying is that he's not covered by the new one and the old one has been used. We understand your argument, counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will stand in recess until we reconnect for the next case. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Good morning. Good morning. Good morning, Kwame. How are you doing, Kim? Great. How are you? I'm just fine. We're going to go ahead. We are connected. If you wouldn't mind, we're going to go ahead and wait just a couple, three, four minutes, make sure that there are no problems. The beginning of the last case, when we called the first time, not during the case, but when we were in our time leading up to when we were starting, I could talk this morning. Maybe I should have some more coffee. But the call did a weird drop thing after a couple minutes, so I just want to let this thing burn for a minute. You do hear me clearly? Okay. Yes. Is there much delay? There's a little bit. It's detectable. You're connected at 128 instead of the standard 384. Yes. But, hey, that's fine. We see and hear you clearly. I don't think that they'll have a problem. Are you getting much delay from our side? No, not much at all. Excellent, excellent. And I see you. I see the clock perfectly. There you go. Me and Vanna White. Okay. Yeah. Well, that would be great. I'll go ahead and find Joshua, have him ready to rock and roll. I'm sorry. What did you say? I said I'll go find the attorney and have him come in, and we'll just kind of wait until we see the judges and the screen will change to show the three judges, and we'll go from there. Okay. Great. That would look like the attorney right behind you, please. That would be you. Okay. This is Kwame Copeland. When you're speaking, though I'm sure you're a very animated speaker, because this is right now, the more movement you make, you may be seeing it on your end, the more movement you make, the more the face gets blurred. So you might want to try to be fairly still. If not, that's fine. But just so you know. I'll try to be flat boring. I'm not going to say anything in answer to that. Fair enough. Okay. Let's give it, like, one more minute. Are we missing anybody? Just oh, yeah. I'll stop being funny. Nice to see you, Kim. You too, Kwame. Thanks. Have a good weekend. Okay. And I have no control over the split screen there. That's fine. That's fine. Okay. Oh, so I only fairly don't see the judges when the time comes. No, we don't want to disconnect.  Stay in call. Okay. For some reason, I think something's happened to. Is Kim there? Technical difficulty. Did you accidentally hit the call drop key instead of the mute key? Yes, sir. Guilty? I'm not touching the remote. What we did last time was we actually had a little problem with the mute, so we'd just appreciate it if you just wouldn't try to mute it. Just leave it be. We're not touching a thing. Thanks again. Okay. Bye. Bye. Bye. Bye. Bye. Bye.  Bye. Bye. Bye. Bye. Bye. Bye. Bye. Bye. Please be seated. We will now hear argument in United States versus Cole. Counsel for the appellant.
judges: O'scannlain, Graber, Bea